JESSE JEFFREY *against* FICKLIN AND BENNETT.

ERROR *to Lawrence Circuit Court.*

Wagers that are contrary to public policy, or immoral, or that affect the feelings, interests or characters of third persons, are contrary to sound policy, and not recoverable by law.

Wagers upon elections, then pending, are calculated to endanger the peace and harmony of society, and have a corrupting influence on the public morals, and have uniformly been considered as contrary to sound policy.

A stake-holder, who pays over money bet upon an election, in opposition to the express notice and order of the better, does so at his peril; nor can a stake-holder refuse to deliver up the wager, if demanded by the party, before the final result of the election.

No action in affirmance of such a wager can be maintained; but one in dis-affirmance of it, which treats it as void, and aims to prevent the other party from retaining any benefit which he has derived from the contract, may be maintained.

This was an action originally commenced before a justice of the peace, and by appeal taken up to the circuit court. The facts disclosed in the bill of exceptions show that Jeffrey and one Bagley agreed to bet a saddle upon an election thereafter to take place, and being in the store of Ficklin and Bennett, inquired of Bennett the price of a saddle, and were informed by him that the price was $24 00. Bennett sold the saddle to them, and Jeffrey and Bagley each executed his sealed note for the sum of $24 00, and delivered it to Bennett, as a stake-holder, together with the saddle, and directed him if a certain man should beat for a certain office, then to deliver to Bagley the saddle and his own note; and make him pay for the price of the saddle. And if a certain other man should be elected to said office, to deliver the saddle to Jeffrey, together with his own note; and hold Bagley's note and make him pay it as the price of the saddle. Some time after this agreement was made and before the election took place, Jeffrey and Bagley agreed to withdraw the wager and rescind the bet in the presence of Bennett; and Bagley called upon Bennett for their notes, which Bennett refused to give up. Bagley then said he would let it stand as it was. After this, and before the election was decided, upon which the wager had been made, Jeffrey notified Bennett not to give up the saddle to Bagley, as the wager had

been drawn, and he would not hold himself responsible or bound to pay for the saddle if Bennett delivered it to Bagley. The man on whom Bagley wagered was elected, and Bennett delivered over to him the saddle and his note, and commenced this suit against Jeffrey upon his note.

Upon this state of facts the circuit court rendered judgment against Jeffrey on the note.

TRAPNALL AND COCKE, for plaintiff in error:

Our statute against gambling is exceedingly broad and comprehensive, and makes all promises, agreements, notes, bills, *bonds*, or other contracts, judgments, mortgages, or other securities, or any other conveyances whatsoever, made, signed, given, or granted, drawn, or entered into, or executed by any person or persons whatsoever, where the whole or any part of the consideration of such promise or agreement, conveyance or security, shall be for money or other valuable thing whatever, laid or betted at cards, dice, &c., &c., or any wager whatsoever, or for reimbursing or repaying any money lent knowingly, or advanced at the time or place of such play, &c., &c., shall be utterly void and of no effect, to all intents and purposes, whatsoever.

But without our statute the wager in this case is illegal and void by the common law. In the case of *Bunn. vs. Riker*, 4 *J. R.* 426, which was an action to recover money bet upon an election, the court say: "It was held in the case of *Jones vs. Randall*, (*Cowp.* 37), and *De Costa vs. Jones*, (*Cowp.* 729), and in several of the more recent cases cited on the argument that wagers against the principles of sound policy are void. I consider this to be emphatically a wager of that kind." In *Vischer vs. Yates*, 11 *J. R.* 23, which was also an action to recover money bet upon an election, *Kent, Ch.* I, says: "The wager in this case was illegal." This was so decided in *Bunn vs. Riker*, and that decision was afterwards repeated in *Lansing vs. Lansing*, 8 *J. R.* 454. And when we consider the importance of popular elections to the constitution and liberties of this country, and that the value of the right consists in its independence, moderation, discretion, and purity, with which it is exercised, we cannot

but be disposed to cherish a decision which declares gambling upon such elections to be illegal, as being founded in the clearest and most incontestable principles of public policy.

The counsel for the plaintiff admits that as between plaintiff and Bagley the contract or agreement was void. But insists that Bennett stands in a different relation. That with him the consideration given for the writing obligatory, was the saddle, and that he is in no degree affected by the illegal contract between plaintiff and Bagley. This position cannot be maintained. The testimony shows he was cognizant of the illegal nature of the contract, and the part he took in it made him to all intents and purposes a *particeps criminis*. Although he was not a principal in the illegal agreement, he yet aided and assisted in its consummation, and was to derive a profit from it.

There was no absolute sale of the saddle either to plaintiff or Bagley, and whether the one or the other should pay for it, was made contingent by the express agreement of all parties upon the determination of their bet. The responsibility of the plaintiff, therefore, to pay the amount of the note sued for, does not arise from any absolute sale to him, but from the decision of the bet against him. Or, in other words, a gambling and fraudulent contract against public policy, and good morals must be persisted in and consummated before his liability becomes fixed. The defendants, in accepting the note, with a full knowledge of all the facts, and consenting to look to the plaintiff for payment only in the event of his losing his wager, made themselves parties to the gaming and immoral transaction, and received the note stained and vitiated by an illegal and fraudulent consideration.

It is conceded by the counsel for the defendants, " if Bennett had depended upon the result of the election for the price of his saddle, it would have been a matter solely of chance and consequently void." But, it is contended that the case is relieved from all fraud or illegality inasmuch as Bennett had made an absolute sale of the saddle, and only relied upon the result of the election to determine which of the two should pay for it. We cannot see the force of this distinction. The principle is the same, whether it was left to chance to decide the price of the saddle or the person who was to pay it.

In either case the right to recover could only be made out by and through an illegal and void contract. In this case plaintiff and Bagley had both executed and delivered their writing obligatory to the defendant, for the price of same saddle, both cannot be liable; defendants sold the saddle to them for twenty-four dollars, and of course could not exact from them the payment of forty-eight dollars, without violating every principle of fair dealing and common honesty. Besides, by the express agreement of all parties, only one of the notes was to be paid. We again ask who is it? How, and when would defendants know which note to proceed upon to recover the costs of the saddle? This could not be ascertained without the completion and decision of the gaming contract. If rescinded by the parties to it, which of the two would be bound to pay? How could the contingency happen upon which the liability of either would become fixed? It is manifest, it never could happen; and if so, the defendants have admitted no right of action could accrue. The issue of the election itself could not impose the liability; the parties must have looked to the decision of the bet, and although the decision of that bet depended upon the result of the election, yet *it was the loss of the wager*, and not the election of this man or that, which the parties regarded as the true event, the happening of which would determine whether plaintiff or Bagley would be bound to pay the note, since when the bet was rescinded no liability could attach to either. But it is contended that the parties to the wager could not withdraw the bet or exercise any control over the wager, without the consent of Bennett, as his right might thereby be destroyed.

This we cannot but consider as a most suicidal argument on the part of the defendants. It fully admits and establishes the proposition we have been laboring to build up. The contract about the saddle was so intimately interwoven and connected with the gambling contract, as that the one depended on the other; and for this very reason the taint of illegality and fraud attaches itself to both. The law in its anxiety to repress vice and promote the general welfare of the State and of society, will never lend its aid to assist in compelling the performance of a contract against public policy and good morals. On the contrary it will ever afford a *locus pœnitentiae* to those who may

Jeffrey *against* Ficklin and Bennett.

repent of their intentions to perpetrate an offence against the laws. Hence all the authorities, without a single exception, that we have been able to find, lay it down as a general principle that either party to a gaming contract may rescind it before the event has happened which is to decide the wager. And many authorities of the highest consideration go even farther than this. Plaintiff and Bagley had clearly, then, the right to withdraw their bet. And the law cannot recognize or protect any right or interest in the defendants when that right can only be supported by enforcing others to persist in an act subversive of public and private morality, and positively forbidden by the law itself.

If defendants have so far participated in an illegal contract as to make their rights in any degree dependant upon it, they must abide the consequences of their acts. In violating the law they have placed themselves beyond the pale of its protection. There is another view of this case that presents an insurmountable obstacle to the defendants' recovery. The testimony shows they were stake-holders, and that before the event that was to decide the wager, they were notified not to pay the saddle over to Bagley, as they had withdrawn their bet, at the same time informing them if they did so he would not be responsible for the price of it. The defendants, contrary to those instructions, handed over the saddle to Bagley after the result of the election was known. In doing so they acted in their own wrong and became themselves liable to the plaintiff for the value of the stake deposited with them.

The duty and liability of stake-holders are ably discussed, and all the authorities carefully examined in the case of *Vischer vs. Yeates*, *J. R.* 23, above referred to: *Kent, Ch. I,* says the English rule is the true rule upon this subject. On the disaffirmance of the illegal and void contract, and before it has been carried into effect, and while the money remains in the hands of the stake-holder, each party ought to be allowed to withdraw his own deposit; the court will then be dealing equitably with the case; it will be answering the policy of the law and putting a stop to the contract before it is perfected." This case settles the principle, that if a stake-holder, before the money has been paid over, is notified not to pay it over, and does

so, he is responsible for the amount deposited by the party so notifying him.

The saddle, or the plaintiff's note for the price of it, was the deposit placed by him in the hands of the stake-holders, and they having paid it over to the other party after being notified not to do so, became responsible to the plaintiff for the value of his deposit, the very thing the defendants are attempting to recover of him in this suit.

It is manifest to our minds that this note was founded on a gaming consideration, or upon no consideration at all; the plaintiff never received any thing of defendants for it. The saddle, which is the alleged consideration, was handed over by defendants to a third person contrary to the express instructions of Jeffrey. Having of their own wrong disposed to another person of the very saddle for the purchase of which they allege this note was executed, they can have no right in law or equity to compel the plaintiff to pay the note. In thus handing over to Bagley the saddle, the defendants show conclusively they did not look to any contract of bargain and sale between Jeffrey and themselves as the consideration of the note. It is evident they looked to the gaming contract and the loss of the wager as imposing upon the plaintiff the obligation to pay the note, and it was in fulfilment of that illegal and fraudulent contract, and not of a contract of bargain and sale that the saddle was delivered to Bagley. Even if it had been a contract of sale, to bind Jeffrey, the property sold must have been delivered to him or his agent, and in giving it up to a third person contrary to his express instructions they have no claim against Jeffrey, either in law or good conscience, for the payment of the purchase money.

THOMAS JOHNSON, *Contra:*

The judgment of the Circuit Court in this case must stand or fall upon the first section of the statute concerning gambling contracts, contained in Steele and McCampbell, and which statute will be found on the 204th and 5th pages of said code. That law provides that all contracts, founded upon a gaming consideration, either in whole or in part, shall be void, and that any money knowingly lent or advanced

Jeffrey *against* Ficklin and Bennett.

at the time or place of a play, or cock-fighting, or other sport or pastime, to any person or persons gaming, betting or wagering, or shall at such time and place, so play, bet or wager, shall be utterly void, and of no effect. The only question presented by the bill of exceptions for the consideration of this court is, whether the contract sought to be enforced by the defendants in error, is bona fide, or in fraud of the law against gaming. I think the court will readily perceive from the testimony that the case is neither embraced by the letter or the spirit of that law. If the writing had been executed by Jeffrey to Bagley, and upon the trial it had appeared that the consideration was of a gambling nature, or in any way tinctured with a game, there can be no doubt but that it would have been absolutely void, and no recovery could have been had upon it. And it is a proposition equally clear, that in case Bennett had loaned money to Jeffrey, or advanced him money for the purpose of having bet or wagered upon a game, or sport, or pastime, or cock-fighting, at the time or place of such cock-fighting, or play, or pastime, that the consideration would have been illegal and consequently could not have been enforced. I will now endeavor to ascertain whether Bennett sustains such a relation to Jeffrey as to vitiate the contract, and prevent a recovery upon it. The testimony is, that Bagley and Jeffrey were in the store of Bennett on the 5th of August, 1838, and that sometime thereafter the election was to take place, upon the result of which Bagley and Jeffrey had agreed to wager said saddle. There is nothing in the testimony to show that Bennett was cognizant of the fact that Bagley and Jeffrey intended to wager said saddle upon the result of an election, until they had perfected the purchase, nor does it appear that the transaction happened at the time and place of the game, or of the event upon which the saddle was wagered. The distinction between this case and those contemplated by the act referred to, must be manifest at first sight. If Bennett had depended upon the re-result of the election for the price of his saddle, it would then have been a matter solely and exclusively of chance, and consequently void; but when it is considered that he had made an absolute and unconditional sale of the saddle, and only relied upon the result of the election to determine which of the two should pay the price of it,

30

the case is at once relieved of even the slightest tincture of fraud or illegality. The rule of law is that all things which are capable of being reduced to a certainty, are certain. In this case the payment of the purchase money did not depend upon the result of the election; it was wholly immaterial and unimportant to Bennett in whose favor the election should terminate, and all that concerned him was, that the election should take place. I am free to admit, that in case the election had not have taken place, the action could not have accrued, as it would have been impossible to determine which of the two should be held responsible for the value of the saddle; but the election having taken place, that which was uncertain has become certain, and that event, upon the happening of which, the liability should be forever fixed, has accrued. A contract entered into to take effect upon the happening of a contingency that is impossible in the course of nature, is clearly void; but not so with a contract which is to take effect upon the happening of an event that may or may not take place. It was urged before the court below, that though the contract might be binding between Bennett and Jeffrey, yet as Bagley and Jeffrey agreed to withdraw the wager, that therefore Jeffrey was discharged. This would doubtless have been a good defence if urged by one of the immediate parties against an action instituted by the other, and it would have been equally available against Bennett, if it had appeared in evidence that he had agreed to rescind his contract with the parties. But we respectfully insist before this court that any agreement between the parties to the wager, could not by possibility affect the rights of Bennett, unless assented to by said Bennett. We insist that Bagley and Jeffrey had no manner of control over the wager, without the consent of Bennett, as his rights might thereby have been destroyed. It was not a consideration annexed to the sale of the saddle, that in case Bagley and Jeffrey should feel disposed to withdraw the wager, that Bennett should lose the sale of his saddle, but on the contrary, a positive and unconditional sale was made, and nothing could deprive Bennett of the benefit of said sale, but his own voluntary act, or the failure of the contingency upon which the liability should become definitely fixed. Bennett sold the saddle to Bagley and referred (not the debt), but the debtor, to chances. The doctrine

Jeffrey *against* Ficklin and Bennett.

contended for by the plaintiff in error, if sustained by the court, would involve a manifest absurdity, as it would then be impossible to make a good and valid contract, to take place in future. Suppose, for the sake of argument, that Bennett had commenced suit against Jeffrey before the happening of the election, spoken of in the bill of exceptions; what would have been the defence set up by Jeffrey? Would he have pleaded the gaming act? We presume not. But we think he would have pleaded that the instrument sued upon, was an *escrow*, and could not be enforced until after the happening of the election, as that event was necessary to fix the liability upon him. This would have been a good defence to an action brought before the happening of the contingency; but when the contingency has happened, and the contract become complete, he is driven from that defence, and the last resort is to endeavor, by a sort of legerdemain, to change the real meaning of the contract, which is *bona fide*, so far as Bennett is concerned, and stretch the statute so as to reach the case. The court will perceive from the statute, that, even in case the saddle had been loaned for the purpose of being wagered upon the result of the election, that Bennett could have recovered its value, unless it had been done at the time or place of the transaction wagered upon. I regret that there are no authorities directly in point; however, I infer from the silence of the books upon the subject, that the case has ever been considered too clear to admit of litigation.

DICKINSON, J., delivered the opinion of the court:

Wagers, contrary to public policy, that are immoral, or affect the feelings, interests, or characters of third persons, are contrary to sound policy, and are not recoverable in law. In a country where elections are frequent, and free, as in this, every means should be adopted to maintain them pure. Wagers operate on the passions, and influence the parties, by the strongest motives of pecuniary interest, to support, and induce others to vote for the same person. The freedom of choice and unbiassed action is destroyed. The disposition to select men for their integrity and capacity, no longer exists. And the corrupting influence proceeding from this species of gambling is unfortunately felt, to a very great extent, by every class of society. The

consequences resulting from it, are to be deeply deplored: and therefore it is, that the courts uniformly discountenance actions where they are founded in iniquity and injustice. Is the claim of the defendants in error of a character that will permit them to come into court with clean hands and pure consciences, and ask aid in the recovery of a claim for which no consideration has been received? All the parties to the record were *participes criminis.* Bennett, the partner of Ficklin, as stake-holder of the notes, was cognizant that they were bet upon an election then pending; and, though both parties had agreed, prior to the result, to rescind the wager and withdraw the notes, Bennett refused to deliver them up. And, notwithstanding Jeffrey notified him that he would not pay it, in any event, he retained possession, and, upon the result of the election, delivered the saddle to Bagley, the winner, and sued Jeffrey upon his note, which was for the payment of the saddle, and obtained judgment in the circuit court, on appeal. Betting upon elections then pending, as calculated to endanger the peace and harmony of society, and to have a corrupting influence upon the public morals, has uniformly been considered as contrary to sound policy; and so it was decided in England, upon a wager on the election of a member to Parliament, 1 *T. R.* 56, *Allen vs. Hearne.* The whole doctrine is ably reviewed and sustained in the case of *Yates vs. Foot,* 12 *J. R.* 1. As to the character in which the defendants in error stand, Comyn, in his Treatise on Contracts, 30, 46, says, that, "It is a general rule, that if the contract be executed, and both parties *in pari delicto,* neither of them can recover, from the other, the moneys so paid; but if the contract continues, and the party is desirous of rescinding it, he may do so, and recover back the deposit." And this distinction is taken in the books, viz: "Where the action is in *affirmance* of an illegal contract, for the performance of an engagement *malum in se,* it can in no case be maintained. But where the action is in *disaffirmance* of such a contract, and, instead of endeavoring to enforce it, presumes it to be void, and seeks to prevent the defendant from retaining the benefit which he derived from an unlawful act, then it is consonant to the spirit and policy of the law that he should recover." A stake-holder who pays over money bet upon an election, in opposition to the express notice and order of

the better, must do so at his peril; nor can a stake-holder refuse to deliver up the wager, if demanded by the party, before the final result of the election.    The contract was executory.    The wager probably originated in hasty zeal and the impulse of passion, and when, on cool reflection, they were desirous of rescinding it, Bennett refused to return the stake as, by law, he was bound to do.    Having a knowledge of the whole transaction, and the consideration for which the note was given, the circuit court erred in giving judgment in favor of the plaintiff.    The judgment is reversed.